Daniel P. WATERS, Appellant,

v.

CABINET FOR HUMAN
RESOURCES, Appellee.

No. 86-CA-1992-MR.

Court of Appeals of Kentucky.

Sept. 18, 1987.

Robert H. Littlefield, Legal Aid Society, Inc., Louisville, for appellant.

William J. Hernandez, Cabinet for Human Resources, Office of Gen. Counsel, Frankfort, for appellee.

Before COMBS, COOPER and DYCHE, JJ.

COOPER, Judge.

This is an appeal from an order of the trial court relieving the appellee, Cabinet for Human Resources, of its responsibility, under an original order, to return the two youngest children of the appellant, Daniel P. Waters, to their home state of New York. On appeal, the principal issue is whether the trial court clearly abused its discretion in so acting. Reviewing the record below, we reverse and remand.

The tragic state of facts underlying this appeal are as follows: In June of 1970 the appellant and Sandra Waters were married in the state of New York. Born to this marriage, were Patricia Lynn, born on September 8, 1970 (natural father unknown); Diane Marie, born on October 13, 1972; and Rebecca Jean, born on July 16, 1974. From the record, it is apparent that the marriage was, from the beginning, far from ideal. The family underwent an extended period of counseling with the result that the children were voluntarily placed with the Cayuga County Department of Social Services in Auburn, New York, in September of 1978. Thereafter, the appellant and Sandra separated and the children remained in the custody of the Social Services of New York State.

In May of 1980, Sandra absconded with the children during an authorized overnight visit. During the next three years, the children and their mother lived in nine different locations in five different states. During this time, the appellant had only infrequent contact with them. In February of 1983, Sandra and the children settled in New Haven, Kentucky in Nelson County. At this time, Sandra was living with her boyfriend, Merten Bond. The latter had, as evidenced by a subsequent criminal trial, been sexually abusing all three girls for several years. The sexual abuse was uncovered during the time in which the children, Sandra and Bond were living in New Haven. As a result, the children were removed from the home and placed in emergency care with the appellee. Sandra and Bond were subsequently arrested and charged with committing and aiding in the repeated rape of all three children. At the time the children were placed in emergency care with the appellee, it was determined that they had in fact been removed from proper custody with Cayuga County, New York. An agent for the Kentucky Department for Social Services contacted Cayuga

County and was told that New York's Department of Social Services had a custody order and would be willing to resume custody of the children. Nevertheless, the appellee declined to send the children to New York, apparently on the basis that the children were necessary witnesses in the subsequent criminal prosecutions of both Sandra and Bond.

Both Bond and Ms. Waters were convicted and sentenced to numerous life sentences. During this time, the appellant continued to have contact with the appellee, as well as with his children, and repeatedly requested that they be returned to him. This, the appellee declined to do. In May of 1984, it filed an action to terminate the parental rights of both Sandra Waters and the appellant. At the time this action was tried, in March of 1985, the children had been in the custody of the appellee for over two years.

Subsequent to the presentation of all the evidence, the Nelson Circuit Court, entered findings of fact and conclusions of law terminating the parental rights of Sandra Waters. Nevertheless, it refused to terminate the parental rights of the appellant, ruling that there was an absence of "clear and convincing evidence" on this issue. It ruled, in part, as follows:

Daniel has not been the best father in the world to these children. When he was living with the children between 1970 and 1978, he abused them, he ignored them, and he did not provide for their needs. In fact, he voluntarily permitted his children to enter foster care. Recently, however, Daniel has had a change of heart. He claims that he attempted to find the children between 1978 and 1983 when they were being moved around the country by their mother. He could have been more diligent in his search, but he appears to have made a sincere effort to defend this action, and he seems sincere in now wanting to take care of his children. He regrets his past activities and neglect.

Daniel does not earn much money, but he has been supporting himself for the past four years, and he has a home in New York. His mother died several years ago, and Daniel and his brother now reside in her home. He has never divorced Sandra; and he has taken up company with a girlfriend, who has given birth to an illegitimate child. He loves his children and is willing to participate in a reunion plan in New York.

The law in Kentucky and across this nation on child termination cases is clear. Parental rights are not to be terminated unless there is clear and convincing evidence that they should be terminated.

The Court has read with interest the Kentucky cases of *D.S. v. F.A.H.*, Ky. App., 684 S.W.2d 320 (1985), and *O.S. v. C.F.*, Ky.App., 655 S.W.2d 32 (1983). The law in the case of *O.S. v. C.F.* and the factual situation in *D.S. v. F.A.H.* tell this Court that conditions must be desperate before a circuit court can take the drastic action of terminating parental rights.

This Court has already found that the facts concerning the parental rights of Sandra Waters were worse than desperate and that she does not deserve to be the mother of these children for what she allowed them to experience. The facts concerning Daniel's treatment of the children are not so terrible and desperate. He obviously has not been a good father, and he has not supported them, but it should be the role of the state and this Court to attempt to give him the benefit of the doubt and to try a plan to reunite him with his children.

In ruling that an attempt should be made to reunite the appellant with his children, the court held as follows:

KRS 199.603(3)(d) provides that the Court can consider, in determining the best interests for the children, that the Cabinet provide services to the parent to facilitate a reunion. In this case, the children are in Kentucky and the father is in New York. It appears from the evidence that in 1978 the children were under the care and supervision of a child care agency for the State of New York. Whether or not there is still an active and pending case in New York is not clear from the evidence. Apparently

there has been some contact between the State of Kentucky and the State of New York concerning this case. From a practical standpoint, New York should handle any attempt to reunite these children with their father.

This Court does not believe that the evidence is sufficiently clear and convincing to merit the termination of the parental rights which Daniel Patrick Waters has to his three children. However, this Court is not convinced that he is a worthy candidate to immediately have custody of his children. Therefore, this Court concludes that the Cabinet for Human Resources should initiate a plan to reunite these children with their natural father. If possible, and if the interstate compact applies between Kentucky and New York, and if New York is willing to accept jurisdiction of this case, then the children should be transported to New York and placed in foster care under a plan to reunite them with their father. If the father is unsuccessful in his plan, then the state of New York can decide whether or not it should proceed to terminate his parental rights in New York.

Counsel for the parents raised the issue of whether or not this Court has jurisdiction to determine if the parental rights should be terminated. Chapter 199 of the Kentucky Revised Statutes would seem to give this Court jurisdiction. If the Uniform Child Custody Jurisdiction Act is applicable, and KRS 403.-410(3) would seem to indicate that it is, then this Court finds and concludes that 403.420(c) would give this Court jurisdiction.

In its final judgment, the circuit court reiterated its order requesting the appellee to make every viable attempt to return the infant children to the appellant in New York:

To the extent possible, the Cabinet for Human Resources shall return the infant children of this action to the appropriate authority in the State of New York for that agency to provide services to the natural father and children which will be likely to reunite the family and bring about a lasting parent-child relationship.

The Cabinet shall report back to this Court on whether or not the children can be properly placed in New York.

The trial court's final judgment was entered on August 26, 1985. The appellee did not appeal from that order. Nevertheless, on April 22, 1986, it requested relief from such order stating that it should be relieved "of any costs or responsibilities for the placement of the youngest two children in New York." The trial court—the successor trial court to the original circuit court—sustained the appellee's motion. In sustaining such motion, it ruled as follows:

The Court has conditioned its ruling with "ifs". The Court, in its Findings, was not able to say that the Interstate Compact on Juveniles applied in this case. The Court further stated, "if New York is willing to accept jurisdiction of this case," then New York should proceed with disposition of this case with jurisdiction over custody of the children and the parental rights of the father. This Judge interprets the ruling that Kentucky was not retaining jurisdiction, and further proceedings would be the responsibility of the State of New York.

The Respondent cites a letter dated January 21, 1986, from the Department of Social Services of the State of New York advising that foster care services would be provided. However, the letter included the agency's costs for upkeep of the children and stated that Kentucky would be required to furnish medical coverage on the children. It further stated that quarterly reports on the Waters children would be sent to Kentucky.

The Court's ruling is based on the state of New York accepting jurisdiction and then proceeding with a final disposition of custody and parental rights in New York. This Court finds and concludes that the letter from the Department of Social Services in the state of New York does not comply with the Court's decision of August 23, 1985. The state of New York has not accepted jurisdiction to make a final disposition of this matter. The letter simply states that New York will provide foster care

for the children at Kentucky's cost, send the home evaluation of Mr. Waters to Kentucky, and send quarterly reports on the children to Kentucky. This clearly indicates that New York requires Kentucky to retain jurisdiction. It was not the Court's intent that Kentucky retain jurisdiction, but rather that New York accept jurisdiction and proceed to a final disposition without Kentucky being further involved. The Court's ruling is clear that the state of New York should evaluate and decide as to custody by Mr. Waters and his parental rights. The Commonwealth of Kentucky does not need the home evaluation of Mr. Waters.

Furthermore, the Court finds no authority under the Interstate Compact on Juveniles requiring the costs to be paid by the Commonwealth of Kentucky. The Compact does provide as to payment of costs as to "delinquent" juveniles but is silent as to "nondelinquent" juveniles, as in this case.

As the Court did not intend for the Commonwealth of Kentucky to retain jurisdiction, the Commonwealth should not be required to reimburse the state of New York. The state of New York should look for any reimbursement from the father of the children, who is a resident of New York and desires custody of the children.

The return of the children to New York is predicated on the state of New York accepting jurisdiction and relieving the Commonwealth of Kentucky of all responsibility and further disposition. Therefore, the motion of the Petitioner should be sustained.

It is from such judgment and order that the appellant now appeals.

Essentially, the trial court sustained the appellee's motion on the basis that the state of New York would not accept jurisdiction of the children in question. On this basis alone, it ruled that the Commonwealth of Kentucky was relieved of all responsibility in attempting to return the children to the state of New York. Notwithstanding the trial court's findings of fact we find, from a review of the record as well as the language contained in the original trial court's judgment, that the appellee failed to initiate a good faith attempt to reunite the children with the appellant.

Part of the confusion resulting from the original circuit court's judgment was the following language:

> If possible, and if the Interstate Compact applies between Kentucky and New York, and if New York is willing to accept jurisdiction of this case, then the children should be transported to New York and placed in foster care under a plan to reunite them with their father ...

Although the original circuit court did not *explicitly* refer to the Interstate Compact on Placement of Children (I.C.P.C.), it is apparent to this Court that such was its reference, and not to the Interstate Compact on Juveniles (I.C.J.) as the successor trial court believed, as the latter act seems clearly inapplicable. Under the language of the Interstate Compact on Placement of Children, KRS 199.341 *et seq.,*[1] the sending agency of any state attempting to place a child in another state for the purposes of adoption or foster care, retains jurisdiction over that child. *See* KRS 199.341, Article V. Furthermore, the sending agency, here the Commonwealth of Kentucky, continues to "have financial responsibility for support and maintenance of the child during the period of the placement."

Consequently, the language of the original circuit court's judgment may have been confusing: it is possible that New York could have accepted placement of the children under the Interstate Compact on Placement of Children without acquiring "jurisdiction" over them. Nevertheless, the essence of the original judgment was that the appellee "initiate a plan to reunite these children with their natural father."

---

1. These statutes were repealed by 1986 Ky.Acts ch. 423 § 198 and replaced by KRS 615.-030-.040, by 1986 Ky.Acts ch. 423 §§ 58, 59, effective July 1, 1987. The new Interstate Compact on Placement of Children is part of the new Kentucky Unified Juvenile Code, KRS Chapters 600–645, enacted by 1986 Ky.Acts ch. 423, effective July 1, 1987. The statutory citations referred to herein shall be to the old compact effective until July 1, 1987.

This was especially important in light of the fact that the appellant's rights to his children were never terminated. Although the appellee made an initial attempt to place the children in foster care in Cayuga County, New York as per the circuit court's order of August 26, 1985, it never followed through with this attempt. The record discloses that a letter dated January 21, 1986, from the Commissioner of the Cayuga County Department of Social Services to the appellee's offices, indicated a willingness for Cayuga County to place the children in foster care upon their arrival. Nevertheless, when it became apparent that any placement of the children in New York would not relieve the Cabinet of its financial responsibility, the attempt at placement was stymied.

In a report accompanying the motion to be relieved from the circuit court's order, the appellee stated that the children could not properly be placed in New York until the trial court determined that Kentucky would have no financial responsibility for the children. Yet under the Interstate Compact on Placement of Children,—both the prior and the new Act—the sending state continues to have the financial responsibility for the children until they are adopted or reach the age of majority. Consequently, if the Cabinet's argument is accepted, a "Catch 22" situation develops: it will not place the children in foster care in New York until it is relieved of all financial responsibility; and, under the provisions of the I.C.P.C., it *must* assume financial responsibility even after the children are so placed. Following the logic of such argument, no attempt could even be made to reunite the family or to terminate the appellant's parental rights and allow the children to be adopted. We find the argument to be specious. Stated simply, what difference exists in the Cabinet financially providing foster care for the children in the Commonwealth of Kentucky or placing the children in New York and continuing to provide foster care at its own expense? There is nothing in the record to indicate that the cost of foster care in the state of New York would exceed that in the Commonwealth of Kentucky.

Although the appellee argues extensively and for no apparent purpose that the appellant has failed to provide an adequate and suitable home for his children, such arguments are inapposite. In its original judgment, the circuit court indicated that the appellant was not, as of August of 1985, a worthy candidate to have custody of his children. Nevertheless, it stated that although he was not fit to have the care and custody of the children as of August of 1985, a good faith attempt should be made to reunite him with his children through a period of foster care. As the situation now exists, the appellant is denied all opportunity to establish his fitness as a parent.

Although the trial court seemed to predicate its decision on the issue of jurisdiction—even though it believed the I.C.J. was the applicable statutory procedure involved—there was no specific finding that if the Interstate Compact on Placement of Children applied, the Cabinet's financial responsibility—once it placed the two minor children with the state of New York—would be unduly burdensome given its present responsibility in caring for the children. No evidence was presented on this issue. Significantly, this jurisdiction receives substantial federal funding to provide foster care for children removed from their homes. Title IV-E, Social Security Act, 42 *U.S.C.* §§ 670–76, Pub.L. No. 96–272. Furthermore, under the provision of Public Law 99–272, foster children are now eligible for Medicaid in the state in which they reside. (Consolidated Omnibus Budget Reconciliation Act of 1986, 42 *U.S.C.* § 1396a(b).) And, KRS 199.345 establishes the authority to expend needed funds.

Significantly, the jurisdiction may be moot if, on a remand of this action, the trial court determines that the State of New York, under its original order of custody issued for the children, still has jurisdiction over them. It is arguable, in that the children were unlawfully removed from custody of the New York authorities, such authorities can, and should, resume custody of them. This issue needs to be resolved on remand. For this Court cannot, from a review of the record, especially the letter

of January 21, 1986—from New York's Interstate Compact Unit—determine whether New York authorities were ever requested to resume custody of the children as per its original order.

The breakdown of any marriage and subsequent separation between a parent and child is, in itself, a tragedy. Yet the tragedy undergone by these three children has been greater: all were subject to repeated, prolonged, and violent sexual abuse; the parent primarily responsible for safeguarding and protecting them was, herself, one of the persons inflicting such violence on them; and the children have, with few exceptions, been physically and emotionally separated from their father since May of 1980.

As noted by the original circuit court, the appellant "has not been a good father ..." It may well be that he will never be able to function as a good father, and thus his rights to his children may be terminated. Yet every attempt should be made to reunite an already fragmented and broken family.

By agreement between the appellant and the trial court, Patricia is to be allowed to remain with the appellee. Regarding the other two children of this action, on remand, the trial court is directed to determine if the appellant can be reunited with them.

Thus, the order of the trial court of July 15, 1986 is reversed and remanded to it for a complete hearing on the following issues:

1) whether the authorities of New York still have legal custody of the children in light of its original custody order entered sometime in 1978 or 1979;

2) whether the provisions of the I.C.P.C. can be used to place the children in New York, and, if so, can jurisdiction and financial responsibility be assumed by New York;

3) if New York cannot assume financial responsibility upon placement under the I.C.P.C., would Kentucky's continuation of such responsibility be unduly burdensome as contrasted with this state's current support of the children?

4) if the children cannot be returned to New York, what is their status to be?

The order of the trial court is reversed and remanded for a further hearing and additional findings of facts as directed by this opinion.

All concur.